MODERN WOODMEN OF AMERICA V. LIZZIE WILSON.

FILED APRIL 5, 1906.   No. 14,225.

1. **Insurance, Application for:** CONSTRUCTION. Questions in an application for insurance which, with the assured's answers thereto, are made a part of the contract of insurance are to be construed most strongly against the insurer.

2. **Good Faith:** QUESTION FOR JURY. Where such questions are so framed or placed that the assured may have honestly mistaken their true import, and gave answers thereto which are in fact untrue, but true as he may have reasonably understood the questions, it is for the jury to say, in the light of the entire transaction, whether in making his answers he acted honestly and in good faith, and without intention to misrepresent or conceal any material fact.

3. **Application:** ANSWERS. In answer to a question in such application calling for the names of the ailments for which the assured has been treated and the names of the physicians who treated him therefor, the assured is not required to give the name of every ailment, however trifling, or of every physician he has consulted, but may confine his answer to such ailments as are of a serious character.

4. **Evidence** examined, and *held* sufficient to sustain a finding that the answers of the assured were given honestly, in good faith, and without any intention to deceive the insurer.

ERROR to the district court for Pierce county: GUY T. GRAVES, JUDGE. *Affirmed.*

*Talbot & Allen* and *B. D. Smith,* for plaintiff in error.

*Barnhart & Free* and *W. W. Quivey, contra.*

ALBERT, C.

This is an action on a beneficiary certificate issued to the plaintiff's husband by the defendant, a fraternal insurance association, in which the plaintiff is named as the beneficiary. The application upon which the certificate was issued was made by the assured on the 22d day of January, 1902, and is in writing on a blank furnished by

the association.  The blank application contained a large number of questions which the assured was required to answer, a blank space for his answer following each question.  Among the questions and answers, shown by the application, are the following:

"(14)  Have you within the last seven years been treated by or consulted any physician, or physicians, in regard to personal ailment?"  "Yes."  "If so, give dates, ailment, and physician's or physicians' name and address."  "1900, Dr. Allen.  Grip."

"(15)  Are you now of sound body, mind, and health, and free from disease or injury, of good moral character and exemplary habits?"  "Yes."

"(21)  Have you been an inmate of any infirmary, sanitarium, retreat, asylum or hospital?"  "No."

Then follows this statement: "I have verified each of the foregoing answers and statements from 1 to 28, both inclusive, adopt them as my own, whether written by me or not, and declare and warrant that they are full, complete, and literally true, and I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers.  I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between me and Modern Woodmen of America, and are offered by me as a consideration for the contract applied for, and are hereby made a part of any benefit certificate that may be issued on this application, and shall be deemed and taken as a part of such certificate; that this application may be referred to in said benefit certificate as the basis thereof, and that they shall be construed together as one entire contract."

The application is attached to the certificate and is expressly made a part of the contract evidenced thereby.  The certificate contains these express provisions: "That the Modern Woodmen of America is a fraternal-beneficiary society, incorporated, organized and doing business under the laws of the state of Illinois, and legally

transacting such business in the state where said member resides; that the application for membership in this society made by the said member, a copy of which is hereto attached and made part hereof, together with the report of the medical examiner which is on file in the office of the head clerk, and is hereby referred to and made part of this contract, is true in all respects, and that the literal truth of such application, and each and every part thereof, shall be held to be a strict warranty and to form the only basis of the liability of this society to such member, and to his beneficiary or beneficiaries, the same as if fully set forth in this benefit certificate. (2) That if said application shall not be literally true in each and every part thereof, then this benefit certificate shall, as to the said member, his beneficiary or beneficiaries, be absolutely null and void." The assured died on the 14th day of December, 1902, a little less than eleven months after the date of his application. Payment on the certificate was refused, hence this suit. The defense now relied upon is that the answers hereinbefore set out, of the assured to questions in the application made by him, were made by him in regard to matters within his knowledge and material to the risk, and that such answers are incomplete and untrue.

It conclusively appears from the evidence that the assured suffered from some bodily ailment from late in 1899 to midsummer of the following year. During that period he was treated, successively, by Dr. Alden, who is mentioned in the answer numbered 14, and four or five other physicians. About ten days of the latter part of this period the assured was treated at the home of one of the physicians in the city of Norfolk. Whatever may be the proper designation of the place in which he was treated at that time, in the evidence it is sometimes designated as a sanitarium, and again as the home of the doctor. He left the doctor's home or sanitarium the latter part of June, 1900, and according to the doctor's evidence he was cured of his ailment, and practically sound and well. From that

time until the date of his application he was engaged in farming and other heavy work, and the evidence would sustain a finding that, to himself and others, he seemed to be in good health. There is considerable conflict in the evidence as to the nature and severity of the ailment for which the assured was treated during the period mentioned. Some of the physicians testified that it was pernicious anemia, which is classified as an incurable disease; others that it was merely jaundice, and readily yielded to treatment. It is inferable from the evidence that whatever may have been the technical name of the ailment, or its nature, it originated in an attack of *la grippe.* The evidence also leaves room for a difference of opinion as to the nature of the ailment of which the assured died; one line of testimony tending to show that it was pernicious anemia, another that he died of an ailment resulting from injuries received after his application had been accepted. The jury returned a verdict for the plaintiff, and from a judgment rendered thereon the defendant prosecutes error. The court submitted the case to the jury on the theory that incomplete or untrue answers to questions in the application would not defeat a recovery on the certificate unless such answers, or some of them, were intentionally incomplete or false and made with intent to deceive. Whether that theory is sound is the question now presented by the record.

The theory upon which the trial court submitted the cause is now vigorously assailed; the defendant contending that the honesty and good faith of the assured in making the answers in question are eliminated from the case because such answers are in regard to matters which were within the personal knowledge of the assured and untrue. In support of this contention the defendant invokes the rule announced in *Royal Neighbors v. Wallace,* 73 Neb. 409, which is as follows:

"An untrue answer in an application for life insurance in regard to matters which are shown to be within the knowledge of the applicant and are material to the risk will avoid the policy."

In that case a distinction was shown between untrue answers in regard to matters of opinion or judgment and those in regard to matters shown to have been within the knowledge of the applicant, and the court reached the conclusion that the former, if made in good faith and without intention to deceive, would not avoid the policy, but that the latter, if material to the risk, would defeat a recovery. But while the doctrine announced in that case would necessarily eliminate the question of the good faith and honesty of the assured as to untrue answers in regard to matters within his knowledge, it would not eliminate the question of his honesty and good faith as to the construction to be placed upon the questions propounded in the application. Every practitioner knows that it frequently happens that an apparently false answer is given to a question simply because the witness gathers a different meaning from the question than that his interrogator intended to convey. Hence, ordinarily, the first question that arises when the truthfulness of an answer is challenged is whether the party giving the answer understood the question. The assured is dead and is not here to explain why he answered as he did. The questions are not of his framing, but of the defendant's, thought out and elaborated in the quiet of an office, where every word was examined and carefully weighed. The assured was a farmer, and many of the words and the combinations in which they were used undoubtedly were new to him. Under such circumstances it is highly probable that the assured failed to grasp the true import of some of the questions. As the questions are made a part of the contract and were prepared by the defendant, they should be construed most strongly against it. *Connecticut Fire Ins. Co. v. Jeary,* 60 Neb. 338. And where any of such questions are so framed or placed that the assured may have honestly mistaken their true import, and gave answers thereto which are in fact untrue but true as he may have reasonably understood the questions, it is for the jury to say, we think, in the light of the entire transaction, whether in making his answers

he acted honestly and in good faith, and without intention to misrepresent or conceal any material fact.

Applying the foregoing rule to question numbered 14, and the answer thereto, which we repeat: "Have you within the last seven years been treated by or consulted any physician, or physicians, in regard to personal ailment?" "Yes." "If so, give dates, ailment and physician's or physicians' name and address." "1900. Dr. Alden. Grip."—in the first place it is somewhat involved, consisting in fact of five questions. It is followed by a space for an answer which is barely sufficient to give the name and address of one physician, ailment and date. We have already shown that the assured was ill from the latter part of 1899 until near the middle of the following summer, and that the illness apparently began with an attack of *la grippe*. His illness during that period was practically continuous, and it is not surprising that he should consider *la grippe* as the ailment from which he suffered during the whole period. However, in another part of the application, when asked whether he ever had jaundice, the assured referring to the same illness answered, "Yes." But the evidence shows that the assured, as well as some of his physicians, considered that during the whole period he was suffering from some of the consequences of the attack of *la grippe*. Dr. Alden was one of the physicians who attended him during that period, and was also the medical examiner of the local lodge who took the application. In his report on the examination of the assured for membership he made a somewhat extended statement in regard to the assured's answer that he had had jaundice. Taking into account the nature of the question, which might leave some doubt in the ordinary mind as to whether it called for the name of each physician who had attended the assured during the same spell of sickness, the limited space left for the answer, which is of itself a hint that the answer be brief, and that at the date of the application the assured was apparently in sound health, it is not an unreasonable inference that,

in giving a general designation of the ailment with which he had been afflicted during that period, the date, and the name of an attending physician who could furnish information with respect to it, the assured honestly supposed that he had given all the information sought to be elicited, and had made a full and complete answer to the question. Besides, the defendant itself would seem to have inclined to that view because, while a subsequent answer showed that the assured had had jaundice, and the medical examiner forwarded a statement with respect to that answer with the application, the defendant with the knowledge of the fact before it that the answer to question 14 was not full and complete made no objection on that ground, but accepted the assured and issued the certificate. In view of all these facts and the circumstances surrounding the transaction we think it was for the jury to say whether the assured's answer to question 14 was made honestly and in good faith, and without any intention to deceive the defendant. Besides, courts have not been disposed to hold the assured to a high degree of strictness with respect to questions of this character. It is well settled that in answer to such questions the assured is not required to give the name of every physician he has consulted or every ailment for which he has been treated but may restrict his answer to serious ailments. *Blumenthal v. Berkshire Life Ins. Co.,* 134 Mich. 216, 96 N. W. 17, and cases cited.

In the next question: "Are you now of sound body, mind and health, and free from disease and injury, of good moral character and exemplary habits?"—the space left for the answer is barely sufficient for the word, "Yes." This clearly shows that the company required a categorical answer. The question itself shows that it called for the opinion of the applicant. The applicant at that time, so far as is disclosed by the evidence, may have been, or at least may reasonably have supposed himself to be, in good health and free from disease. The space left for his answer precludes the idea that it was intended that he should give a history of his past ailments. There is nothing in the

record that would warrant the court in holding that the answer was not given in good faith and according to the applicant's condition as he understood it at that time.

We come now to the last question: (21) "Have you been an inmate of an infirmary, sanitarium, retreat, asylum or hospital?" The space left for the answer to that question also indicates that the association required a categorical answer, and the answer is, "No." We have seen that the assured in 1900 was treated at the home or sanitarium of a certain physician for a period of about ten days. We have also seen that this place is sometimes referred to as the home of such physician and sometimes as his sanitarium. This physician testified that he had treated the assured in June, 1900, in the city of Norfolk, and, when asked at what particular place in that city, answered, "At my sanitarium at my home." When asked if he maintained a hospital or sanitarium in that city, he answered, "I did in the year 1901," the year following his treatment of the assured. Taking this evidence all together, we infer that at the time the assured was treated by this physician in Norfolk, the place where he was treated was not commonly known as a hospital or sanitarium, but merely as the doctor's private home where, in special cases, he received patients for treatment. And it is highly probable that the assured knew the place by the name by which it was commonly known and that he would have been surprised had he been told that by entering the doctor's private home for treatment he became an inmate of "an infirmary, sanitarium, retreat, asylum or hospital." The question immediately preceding the one under consideration, "Have you ever taken any treatment for tobacco, morphine, cocaine or opium habit?"—throws some light upon the construction which the assured placed upon the inquiry as to whether he had ever been an inmate of an infirmary, etc. It carries with it a suggestion of the popular conception of the institutions where such habits are commonly treated, which is entirely different from that of the private home of a physician where patients are occasionally received for

treatment. We consider the evidence ample to warrant a finding that the assured's answer to the question under consideration was given in good faith and truthfully, as he understood the question. It is true the jury found specially that the place was a sanitarium, but that is a mere matter of a difference in definitions, and does not necessarily contradict the general finding that the assured's answers were given honestly, in good faith, and without any intention to deceive.

Complaint is made of the refusal of the court to give certain instructions tendered by the defendant, but as such instructions, each and all, conflict with the theory upon which the court submitted the case, and which, in our judgment, was the proper theory upon which to submit it, they require no extended notice at this time.

It is recommended that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.