## ERICKSON v. LADIES OF THE MACCABEES OF THE WORLD.

The reason assigned by the trial court as the ground for admitting evidence is immaterial, if the evidence is competent.

A by-law of a mutual benefit society provided that no benefit should be paid because of the death of a member who had given untrue answer, except that a member who understated her age in good faith should not thereby forfeit her certificate if under the age

limit. Another by-law provided that, where satisfactory evidence should be submitted to the board of trustees of an understatement of age in good faith, the beneficiary should be entitled to receive only an amount bearing the same ratio to the amount named in the certificate as the rate the member paid to the rate the member should have paid. **Held,** that the first by-law related back to the original application in all cases alike, whether insured was living or dead at the time of its adoption, and that the second by-law prescribed that the rule of waiver should govern· the board of trustees in their action upon all death claims.

The act of the soliciting agent of a mutual benefit society in advising assured that the "word 'Accident' would do as an answer" to the question "State the cause of your father's death" cannot be held binding upon the society, where assured expressly agreed in her application that no verbal statement, to whomsoever made, should modify the answers therein, and that she had read and fully understood the same.

Where a question in an application for a benefit certificate is so framed that it calls for specific facts within the actual knowledge of applicant, and excludes matters of opinion or judgment, no interpretation is possible or required, but where the question, whether relating to matters ordinarily deemed material or immaterial, is open to construction, it may and should be interpreted by the court.

Where the answer, upon any fair interpretation of the meaning of a question in a benefit certificate application as it might have been understood by the applicant, may be deemed a true answer, no. forfeiture of rights should be permitted.

"Accident" is defined by Webster as a befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected occurrence of an unfortunate character; a mishap.

A benefit certificate application required the applicant to state "Cause of death" (of father). It appeared that applicant's father had been in ill health, and had some disease which the doctors called diabetes or Bright's disease, but it did not appear that applicant understood he was ill of a disease necessarily fatal. At the time of her application applicant stated to the agent "that her father had not been well, that he had got up out of bed to use a vessel and fell over dead, and· that she did not want to give that in," whereupon the agent suggested "that the word 'Accident' would do," and it was filled in as the cause of his death. **Held,** that the question did not place clearly before applicant the distinction between death resulting from disease and death from some form of external violence, and was so framed that applicant may have honestly mistaken its true import and· given a true answer as she reasonably understood it, and that it was for the jury whether she acted honestly, without intent to misrepresent.

In the absence of exceptions to the charge or the refusal to

give instructions, the presumption is that such instructions were given as to present fully and fairly the exact issues involved.

Objection to a question of a husband whether his wife had had a miscarriage, on the ground that one spouse cannot be examined as to a communication by the other, was properly overruled, as the question called for a fact, not a communication.

A finding by the jury on conflicting evidence will not be disturbed by the Supreme Court.

Where breach of warranty, and not fraudulent suppression of facts, was the issue tried in an° action on a benefit certificate, the jury's finding cannot be attacked on appeal, on the ground that applicant fraudulently suppressed facts.

Though fraud may be predicated upon a suppression of the truth in making application for a benefit certificate, warranty is only based on an affirmation of something not true.

An instruction not excepted to by appellant is the law of the case, and binding on appellant.

(Opinion filed, March 23, 1910.)

Appeal from Circuit Court, Codington County. Hon. GEORGE H. MARQUIS, Judge.

Action by Isabelle P. Erickson, a minor, by John Erickson, her guardian, against the Ladies of the Maccabees of the World. From a judgment for plaintiff and an order denying a new trial defendant appeals. Reversed, and a new trial granted, unless plaintiff file a remittitur.

*John B. Hanten* and *O'Mally & Boerner,* for appellant.

Representations or promises which it is thus agreed shall constitute warranties are usually those of such a character as to be manifestly material to the risk assumed, but their materiality is to be determined solely by the parties to the contract, who may, if they see fit, agree that an apparently trivial statement shall constitute a warranty. When it can be clearly seen that such was their intention, the courts will consider no further, the question of its materiality, but will hold its untruth a good defense to an action on a policy. Ripley v. Insurance Co., 30 N. Y. 136, 86 Am. Dec. 362; Daley v. Insurance Co., (C. C.) 20 Fed. 482; Metropolitan Life Ins. Co., v. Ruthford, 98 Va. 195, 35 S. E. 361; Hoose v. Insurance Co., 84 Mich. 309, 47 N. W. 587, 11 L. R. A. 340; Germier v. Insurance Co., 109 La. 341, 33 South. 361 Kelly v. Clearing Co., 113 Ala. 453, 21 South. 361. When

once it is ascertained that the statement is a warranty and that it is false and the policy expressly provides for a forfeiture in that event the contract must be so enforced, although it concerns a matter of slight importance, and may not in any manner seriously affect the risk. Hutchinson v. Insurance Co., 39 S. W. 325; Cobb v. Ass'n, 153 Mass. 176; Jeffries v. Insurance Co., 22 Wall. 47; Aetna Life Ins. Co. v. France, 91 U. S. 510. Conversations with, or statements made by a soliciting agent of a mutual benevolent association to or at the time of an application for the issuance of an insurance certificate in the absence of proof of fraud, are inadmissible to contradict or vary the terms of the written contract between the parties. Knutson et al. v. Grand Council of N. W. Legion of Honor et al, 7 S. D. 214; Insurance Co. v. Mowry, 96 U. S. 544. By becoming a member of a mutual association one is conclusively presumed to know its constitution and by-laws; it is one of his duties to acquaint himself with them; and if he fails to do so, he cannot escape their force by setting up his lack of knowledge; nor by showing they were not mentioned in his certificate. Davidson v. Old People's Mutual Benefit Society, 1 L. R .A. 842; Simeral v. Dubuque Mutual F. Ins. Co., 18 Iowa 319; Fred Way v. Hamilton Mutual Ins. Co., 29 Conn. 68.

*Sherin & Sherin,* for respondent.

The secretary of a local lodge who takes the application is the agent of the grand lodge, and this too, though the application states he is the agent and acting for the applicant. Kausal v Minnesota Farmers Mut. Fire Ins. Association, 16 N. W. 430; Wood on Insurance, Sec. 139; May on Insurance, Sec. 140-143; Conn. Ins. Co. v. Ives, 56 Ill. 402; Gans v. St. Paul F. & M. Ins. Co.; Columbia Ins. Co. v. Cooper, 50 Pa. St. 331; Johnson v. Dakota F. & M. Ins. Co., 45 N. W. 800; Miller v. Insurance Co., 31 Iowa 216; Insurance Co. v. Eddy, 55 Ill. 213; Rowley v. Empire Insurance Co., 36 N. Y. 550; Eams v. Insurance Co., 94 U. S. 621; Eams v. Insurance Co., 94 U. S. 621; South Bend Toy Mfg. Co. v. Dakota Fire and Marine, 2 S. D. 17. The application was in evidence and the burden was on the appellant to prove their allegation and they failed. Natl. Benn. Ass. v. Grauman,

107 Ind. 288; N. W. Mut. Life Ins. Co. v. Hazlett, 105 Ind. 212; Peidmont & A. L. Ins. Co. v. Ewing, 92 U. S. 377.

SMITH, J.   On the 13th day of January, 1906, one Blanche Erickson took out a membership or policy of life insurance for $1,000 in the defendant corporation, a mutual benefit association organized under the laws of the state of Michigan, and thereafter paid all premiums and assessments to March 3, 1907, at which date she died.  Isabelle P. Erickson, a minor daughter, was named as beneficiary, and brings the action by her guardian, John P. Erickson, to recover the amount claimed to be due upon said policy. The statements and answers contained in the application and the medical examination are expressly made a part of the contract of insurance.

The following warranty is a party of the contract:

"I hereby warrant   *   *   *   that my age as written herein is correct, and that all the statements herein and the statements and answers in my medical examination which is attached hereto and made a part hereof, are full, complete, and literally true in every respect, and that they and each of them are material and absolute and unconditional warranties, and I agree that any untrue statement or answer as hereinbefore contained or written, or any omission or failure to state and answer fully and truthfully in writing, any matter in my medical examination   *   *   *   shall be a breach of this warranty, and of itself forfeit and terminate all of my rights as a member of the order, and of my beneficiary or beneficiaries.   *   *   *"

In the application for insurance, the insured stated:

"I was born on the 17th day of June, 1878, and am 28 years old on my nearest birthday." •

In the medical examination are the following statements:

"Family History.   Note.—In giving the cause of death, avoid all indefinite terms, such as 'exposure,' 'general debility,' 'effects of cold,' 'fever,' 'complication of diseases,' etc.   If the word 'childbirth' be used, state how long after delivery death occurred, and whether there were any evidences of disease of the lungs, if the health of any of the living members is rated as 'fair' or 'poor' state the nature of the ill health.

"Father.   Age at death—56.   Cause of death—Accident. Year of death—About 1896.   Place of death—Eau Claire, Wis. How long sick—3 days.   Previous health—Good.

"Mother.   Age at death—44   Cause of death—Childbirth. Year of death—About 1890.   Place of death—Eau Claire, Wis. How long sick—3 days.   Previous health—Good.

"Give history of your children, both living and dead.   One stillborn and one eighteen months.   *   *   *   Have you ever miscarried?   No."

The contract or policy of insurance also contained the following clause:

"That this application, my benefit certificate and the laws of the order, as now in force, or as may hereafter be enacted or amended, constitute my entire contract with the order, and determine my rights and those of my beneficiary; that the laws of the order may be revised, repealed or amended, and that my rights as a member and those of my beneficiary may be thereby modified, enlarged or reduced, from time to time, and shall be determined by the agreements herein, and by the laws in force at the time of my death."

Notice and proofs of death were submitted to the defendant association.

On the trial of the action, along with the general issues raised by the pleadings, eight special questions were submitted to the jury for answer.   The trial resulted in a verdict for the plaintiff for the full amount of the insurance, and this appeal is from an order overruling a motion for a new trial and from the judgment.

There are 54 assignments of error, a large number of which relate to rulings of the court on matters of evidence at the trial, and it is apparent that a separate discussion of each would extend this opinion beyond reasonable limits.   But we have examined the rulings complained of, and are satisfied that none of them are seriously prejudical to defendant's rights, or demand discussion, save those herein expressly referred to.   Upon the trial of the action two of the by-laws of the defendant association were offered in evidence by plaintiff which read as follows:

"Section 431.    Effect of Untrue Answers in Application.—
No benefit shall be paid on account of the death or disability of a
member who has given untrue answers in her application for
membership; provided however, that a member, who, in her ap-
plication for membership, understated her age, in good faith and
without any intention to deceive shall not thereby forfeit her cer-
tificate, if she was under the age limit of the order at the time of
her original application.    If she was beyond the age limit of the
order at the time of making application, her membership shall be
void from the beginning whether she knew her correct age or not.

"Section 432.    Understatement of Age.—In each case where
satisfactory evidence has been submitted to the board of trustees
showing an understatement of age, made in good faith and with-
out any intention to deceive, the beneficiary of such member shall
be entitled to receive only an amount which bears the same ratio
to the amount named in the benefit certificate, as the rate the mem-
ber paid to the rate the member should have paid based on the
actual age the member had attained at the date of her applica-
tion."

The defendant objected to the offer in evidence of these by-
laws because it appeared on the face thereof that such by-laws
were amended by-laws, and became operative in September, 1907,
subsequent to the death of Blanche Erickson.    The court ruled
that, in the absence of any showing that the amended by-laws
were substantially different from those in force at the time of
her death, the sections might be received in evidence.    The record
does not disclose any prejudical error in this ruling.    The reasons
assigned by the trial court as the grounds of its ruling are im-
material, if the evidence offered and received was competent.    The
contract of insurance provides for an absolute forfeiture of all
rights when the applicant has made any false statement as to her
age.    Such forfeiture could be waived or modified by the de-
fendant company in any class of cases in which it might be
deemed equitable and proper, and the company might make such
waiver alike applicable to all policies, and to all claims arising
after the death of the insured.    The very language of this by-
law seems to us to imply such intent on the part of the defendant:

"No benefit shall be paid on account of the death or disability of a member who has given untrue answers * * *provided however, that a member who * * * understated her age in good faith and without any intention to deceive, shall not thereby forfeit here certificate if she was under the age limit of the order at the time of her original application." This by-law by its language relates back to the date of the original application in all cases alike, whether the insured be living or deceased at the time of its adoption, and section 432 prescribes that the rule of waiver shall govern the board of trustees in their action upon all claims for death losses. It appears in the record that the insured was within the age limit at the time of her application. We are of the opinion, therefore, that said by-laws were properly received in evidence, and therefore the court was not in error in receiving over defendant's objection certain evidence tending to show good faith of the deceased as to the statements concerning her age.

In the application, under the head of Family History, the deceased, Blanche Erickson, stated in substance that her father died from accident about 1896, that he was sick three days, and that his previous health was good. The evidence introduced at the trial by respondent shows, quite conclusively, that the father had suffered some years from diabetes or Bright's disease, and that his death resulted from such disease. In rebuttal of this evidence, or by way of estoppel, the plaintiff called as a witness one Edith Kile, who testified over appellant's objection that she was secretary of the local lodge of the Maccabees of Watertown in the year 1905, and knew the deceased in her lifetime; that she solicited the application for insurance, and personally filled out the application; that at the time the witness filled out this application Blanche Erickson stated to her "that her father had not been well; that he had got up out of bed to use a vessel and fell over dead, and that she did not want to give that in; that thereupon the witness, the soliciting agent, suggested to the applicant "that the word 'Accident' would do." Upon this showing it is contended by respondent that Mrs. Kile, acting as agent for the company, took the responsibility of stating the answer in the form appearing in the application, and advised her in effect that

the answer given would be a proper answer, that Mrs. Kile was the agent of the defendant company as to filling out the blank application, and that the answer inserted by such agent as a sufficient answer to the question is binding upon the defendant company, nothwithstanding the application states that the agent should be considered as acting for the applicant.

In support of this contention respondent cites Kausal v. Minnesota Farmers' Mut. Fire Ins. Co., 31 Minn. 17, 16 N. W. 430, in which Justice Mitchell uses the following language:

"1. On principle. as well as for considerations of public policy, agents of insurance companies, authorized to procure applications for insurance and to forward them to the companies for acceptance, must be deemed the agents of the insurers, and not of the insured, in all that they do in preparing the application, or in any representations they may make to the. insured as to the character or effect of the statements therein contained. This rule is rendered necessary by the manner in which business is now usually done by the insurers. They supply these agents with printed blanks, stimulate them by the promise of liberal commissions, and then send them abroad in the community to solicit insurance. The companies employ them for that purpose, and the public regard them as the agents of the companies in the matter of preparing and filling up the applications— a fact which the companies perfectly understand. The parties who are induced by these agents to make applications for insurance rarely know anything about the general officers of the company, or its constitution and by-laws, but look to the agent as its full and complete representative in all that is said or done in regard to the application. And, in view of the apparent authority with which the companies clothe these solicitors, they have a perfect right to consider them such. Hence, where an agent to procure and forward applications for insurance, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer, and not to the insured" (citing Insurance Co. v. Mahone, 21 Wall. 152, 22 L. Ed. 593; Insurance Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617; Malleable Ironworks v. Phoenix Ins. Co., 25 Conn. 465;

Hough v. City Fire Ins. Co., 29 Conn. 10; Woodbury Savings Bank v. Charter Oak Ins. Co., 31 Conn. 517; Miner v. Phoenix Ins. Co., 27 Wis. 693; Winans v. Allemania F. Ins. Co., 38 Wis. 342; Rowley v. Empire Ins. Co., 36 N. Y. 550; Brandup v. St. Paul F. & M. Ins. Co., 27 Minn. 393, 7 N. W. 735; 2 Am. Lead. Cas. [5th Ed.] 917 et seq.; Wood on Insurance, c. 12; May on Insurance, p. 120). And the decision holds the rule applicable to fraternal companies as to others.

The doctrine announced by that learned court is sound in principle, and has been expressly approved by this court in Smith v. Cash G. F. Ins. Co., 21 S. D. 433, 113 N. W. 94. But the doctrine has necessary limitations in its application. The court holds that the soliciting agent is clothed with apparent or ostensible authority as to all matters connected with the making and filling in answers to questions in the application, and that such ostensible authority may not be limited by a provision or notice contained in the policy subsequently issued upon the application. The court remarks, however: "To be efficacious such notice should be given before the negotiations are completed." The court does not hold that the rule as to limitations upon the authority of insurance agents is different from that governing agencies generally, but only that the ostensible authority of an insurance agent cannot be curtailed by limitations of which the applicant has no notice.

The same doctrine is announced by the Supreme Court of North Dakota in the case of Johnson v. Dakota F. & M. Ins. Co., 1 N. D. 167, 45 N. W. 803. That court says: "But there is nothing in this case tending to show that there was any restriction whatever upon the agent's authority in the matters intrusted to his charge, viz., the matter of soliciting and procuring the application for the insurance in question. As to such duties the agent had prima facie plenary powers coextensive with the matter intrusted to him, and such powers cannot be narrowed by limitations not communicated to the insured. See May, Ins. 144, note 1; Miller v. Insurance Co., 31 Iowa, 232. But "where the solicitor of insurance is expressly limited in his authority in the manner of taking the application, and where such limitation is brought

home to the knowledge of the insured at the time the application
is signed, the insured is bound by the limitation."; Sutherland v.
Eureka F. & M. Ins. Co., 110 Mich. 668, 68 N. W. 985; Carpen-
ter v. Prov. Wash. Ins. Co., 16 Pet. 495, 10 L. Ed. 1044. In the
case before us the assured in her application says: "I hereby ex-
pressly warrant and agree that no verbal statement to whomever
made shall modify this contract or application or the answers
herein written to the above questions. * * * I have read the
foregoing application for my membership and fully understand
the same. * * *" This written declaration over her own
signature, which is in evidence and is not controverted, is suffi-
cient to show, and is an admission of, her knowledge of an ex-
press limitation of the authority of the agent taking the application
to modify her answers to the questions therein written by any
verbal statements made by such agent. And in the application
itself she expressly declares that such answers are literally true
in every respect. We are of the opinion, therefore, that the con-
tention of respondent that the act of the soliciting agent in ad-
vising the assured that the "word 'Accident' would do as an
answer" to the question—which was in effect "State the cause
of your father's death"—cannot be sustained as binding upon the
defendant.

It is, however, earnestly contended by respondent's counsel
that the court may properly construe the question as merely call-
ing for an opinion of the applicant as to the cause of her father's
death, and that an honest answer of the witness giving her opinion
cannot be construed or considered to be a false answer, thus bring-
ing this case within the rule laid down in M. W. A. v. Wilson,
76 Neb. 344, 107 N. W. 568, Rupert v. Supreme Court U. O. F.,
94 Minn. 293, 102 N. W. 715, and other decisions there cited.
The evidence conclusively shows that the father's death was the
culmination of disease, which was known to the members of the
family as Bright's disease or kidney complaint, or some similar
disease. And had the applicant chosen to express an opinion as
to the particular form of disease which caused her father's death,
the doctrine of these cases might be readily applicable. In

such case the answer, though incomplete, might be held truthful and responsive and sufficient. O'Connor v. M. W. A., 124 N. W. 454.

In the case of M. W. A. v. Wilson, supra, the application for insurance contained the following statement: "I have verified each of the foregoing answers and statements from 1 to 28 both inclusive, adopt them as my own whether written by me or not and declare and warrant that they are full, complete and literally true, and I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers." The defense relied upon was that the answers of the assured to questions in the application were made by the applicant in regard to matters within his knowledge and material to the risk, and that such answers were incomplete and untrue. The trial court submitted the case to the jury on the theory that "incomplete or untrue answers to questions in the application would not defeat a recovery on the certificate unless such answers or some of them were intentionally incomplete or false, and made with intent to deceive," and says: "Whether that theory is sound is the question now presented by the record; * * * the defendant contending that the honesty and good faith of the assured in making the answers in question are eliminated from the case because such answers are in regard to matters which were within the personal knowledge of the assured and untrue." The court in discussing its former ruling in Royal · Neighbors v. Wallace, 73 Neb. 409, 102 N. W. 1020, says: "* * * But while the doctrine announced would necessarily eliminate the question of the good faith and honesty of the assured as to untrue answers in regard to matters within his knowledge, it would not eliminate the question of his honesty and good faith as to the construction to be placed upon the questions propounded in the application. Every practitioner knows that it frequently happens that an apparently false answer is given to a question simply because the witness gathers a different meaning from the question than that his interrogator intended to convey. Hence ordinarily the first question that arises when the truthfulness of an answer is challenged is whether the party giving the answer understood

the question.  The assured is dead, and is not here to explain why he answered as he did; the questions are not of his framing, but of the defendant, thought out and elaborated in the quiet of an office where every word was examined and carefully weighed. The assured was a farmer and many of the words and the combinations in which they were used were undoubtedly new to him. Under such circumstances it is highly probable that the assured failed to grasp the true import of some of the questions.  As the questions are made a part of the contract, and were prepared by the defendant, they should be construed most strongly against it (Conn. F. Ins. Co. v. Jeary, 60 Neb. 338, 83 N. W. 78, 51 L. R. A. 698); and where any of such questions are so framed or placed that the assured may have honestly mistaken their true import, and gave answers thereto which are in fact untrue, but true as he may have reasonably understood the questions, it is for the jury to say, we think, in the light of the entire transaction, whether in making his answers he acted honestly and in good faith, and without intention to misrepresent or conceal material facts."

The defendant in the case before us framed its own questions.  The one under consideration required the applicant to state the "cause" of her father's death, and required her to give an answer "literally true."  Such a question upon such conditions is little short of a trap for the feet of the uninformed and unwary. A dozen doctors might have disagreed as to the "cause" of her father's death, and yet the applicant was required to give the literally true and correct answer or forfeit her rights.  The question, the answer, and the conditions in the contract dependent thereon, constitute the entire warranty, and the proper construction to be placed upon such warranty is and must always be a matter for the court to determine.  We do not question the right under the statute of parties to agree that immaterial representations shall be deemed warranties, but we maintain the right of the courts to give every warranty its reasonable construction, where the language of the question and answer may be open to construction or interpretation.  When the question is so framed that it calls for specific facts within the actual knowledge of the applicant, and plainly excludes matters of opinion or judgment, no

interpretation is possible or required. But when the questions, whether they relate to matters ordinarily deemed material or immaterial, are open to construction or interpretation, they may and should be interpreted to the jury by the court as a part of the contract of the parties. And where the answer upon any fair interpretation of the meaning of the question itself, as it might have been understood by the applicant, may be deemed a true answer, no forfeiture of rights should be permitted. The ascertainment of the exact and the true intent and meaning and purpose of the parties as expressed by the language of the contract is the purpose of interpretation.

Applying the rule of interpretation, what did the insurer seek to ascertain when he asked the question "State 'cause' of father's death." Did the insurer intend to require the applicant to answer a question which its own medical expert, with every fact known to the applicant before him, might be unable to answer? Why did the insurer seek information in regard to the father's death? The insurer most certainly knows exactly what specific facts it seeks to ascertain, and why, but the applicant, not an expert in insurance, may know neither. The death of the father from some form of external violence would be wholly immaterial to the purpose of the insurer. Death from disease in some of its multitudinous forms is the fact which may be assumed to be in the mind of the insurer when he framed the question Does the question under consideration in this case place clearly before the mind of the applicant the distinction between death resulting from disease and death from some form of external violence? If not, how may the applicant construe the question? While her statement to the soliciting agent as to her father's death may not be received to relieve her from the effect of a concededly false answer, it might tend to show how she understood the question asked. The evidence shows that her father had been in ill health, and had some disease which the doctors called diabetes or Bright's disease, but it nowhere appears that she understood he was ill of a disease necessarily fatal. His death was sudden, unexpected, shocking, and may it not be said it was "accident" within the well-defined meaning of that word, and that

she intended merely to express that idea? Webster defines "accident" as: "Literally a befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected occurance of an afflictive or unfortunate character; a mishap, as to die by an accident." But appellant seeks to give the word a restricted construction in its favor, and against the assured, by attaching to it in effect the meaning specifically defined in accident insurance policies. Such contention cannot be sustained under the authorities. The applicant might have considered her father's death, with all its attendant circumstances of his falling, and suddenness, and unexpectedness and shock, as an accident, and the answer could be held to be false and untrue only by giving the question itself a restricted meaning. This the courts will not do unless the questions are so specific and so framed as to require it.

It seems to us that the rule announced in the case of M. W. A. v. Wilson, supra, is peculiarly applicable to the case before us. The court says: "And where any of such questions are so framed or placed that the assured may have honestly mistaken their true import, and gave answers thereto which are untrue, but true as he may have reasonably understood the questions, it is for the jury to say, we think, in the light of the entire transaction, whether in making his answers he acted honestly and in good faith, and without intention to misrepresent or conceal any material facts." The substance of this ruling is that an answer which may even be untrue shall not be deemed a false answer within the meaning of the warranty contained in the contract, and therefore should not be held to avoid the policy, when the answer of the applicant may be found to be a true response to her honest conception of the meaning of a general question. In the absence of exceptions to the charge of the court or the refusal of the court to give instructions covering specific propositions, the presumption is that such instructions were given by the court as to present fully and fairly to the jury the exact issues involved in determining the rights of the parties. In this case we have but one exception to the charge of the court, and the portion of the charge excepted to does not relate to the matters here under dis-

cussion. The instructions are therefore presumed to have been of such character as to cover fully and specifically every proper and necessary issue before the jury. Under instructions presumed to be correct the jury in this case have found upon a special interrogatory that the cause of death of applicant's father was accident, and we cannot say upon the record before us that such verdict is not sustained by the evidence.

Appellant assigns the insufficiency of the evidence to sustain other special findings of the jury as to alleged false answers in the application. But each of these falls easily within the rule announced in the foregoing discussion and we need not refer to them further at this time.

Defendant alleged that assured gave a false answer as to a miscarriage, and on the trial offered evidence of a physician and nurse tending to show such miscarriage. In rebuttal plaintiff offered John Erickson, husband of assured, as a witness, who testified that he and his wife had lived together constantly since their marriage; that he had not been away from home any length of time, and stayed right at home with her. He was then asked whether his wife had ever had a miscarriage as alleged by the physician, which was objected to on the ground that the husband cannot be examined as to "communication made by one to the other during marriage." The question called for a fact and not a communication, and the objection was properly overruled. The evidence as to miscarriage was conflicting, and the finding of the jury will not be disturbed. The issues as submitted to the jury on the trial seem to have presented a breach of warranty arising from the alleged falsity of the answers in the application. No question of fraudulent suppression of facts is involved in the special questions submitted to the jury, the answers to which by the jury are alleged by appellant to be not sustained by the evidence. Breach of warranty, and not fraudulent suppression of facts, was the issue tried by the jury, and their finding cannot be attacked now upon the ground that the applicant fraudulently suppressed facts. No request for an instruction on this proposition was made by appellant, and none given by the court in its general charge.

The rule is well stated in Dilleber v. Home Life Ins. Co., 69

N. Y. 256, 25 Am. Rep. 182: "Although fraud may be predicated upon a suppression of the truth, warranty is only based on an affirmation of something not true." In the case of a partial answer a warranty will not extend beyond the answer. The assured in her application stated she was born June 17, 1878, and the jury so found by a special verdict. On the trial respondent offered no direct evidence as to the age of the assured, but appellant introduced evidence showing quite clearly we think that she was born June 17, 1876, and that her answer was incorrect. Upon this issue we think the evidence does not sustain the finding of the jury. It is, however, contended by respondent that the question of the good faith of the assured in answering this question in the application might be considered by the jury to show that the assured might recover a sum less than the full amount of the policy, under the provisions of sections 431 and 432 of the by-laws above quoted, and the rate card of the appellant was introduced in evidence to determine the amount of recovery under the by-laws. We think respondent is right in this contention. The court instructed the jury. "If you answer the first of the said questions in favor of the contention of the defendant that said Blanche was born on June 17, 1876, and not on June 17, 1878, as claimed by the plaintiff, you will, if your general verdict be in favor of the plaintiff, reduce the amount of her recovery one-twelfth, so that it will be $916.66 and interest, instead of $1,000 and interest." This instruction was not excepted to by appellant, and is therefore the law of the case, and is binding upon the appellant. We regard the evidence as insufficient to sustain the general or special verdict for the full amount of the policy because of error in the answer as to assured's age.

For this reason the case will be reversed and a new trial granted, unless respondent shall within 30 days file with the clerk of the circuit court a remittitur of the amount of said judgment in excess of $916.66, and interest thereon from the date of said verdict.