## Chicago Veneer Co. et al. v. Jones.

(Decided March 18, 1911.)

### Appeal from Pulaski Circuit Court.

1. A servant who receives an injury by reason of the fact that the place where he was directed to work was not reasonably safe, if this was known to the master, and could have been remedied by ordinary care, may recover for his injury, although the particular injury that he received might not reasonably have been anticipated, where it should have been anticipated that the condition was not reasonably safe for the work assigned him.

2. The refusal of the court to give an instruction on accidental injury was not prejudicial where the court instructed the jury that the plaintiff could not recover if the injury was the result of one of the ordinary hazards of the business.

3. When the life tables are introduced the court should, when requested, tell the jury what the tables show, and for what purpose they are admitted, but it is unnecessary to introduce evidence as to what the tables show.

4. A verdict of $7,000.00 is not excessive where the plaintiff has lost one eye, and the other is seriously affected by reason of which he has been compelled to give up his business at which he was earning $3.00 a day and the plaintiff was 23 years old.

O. H. WADDLE & SON for appellant.

ROBERT HARDING, JAS. BENTON, J. W. RAWLING, EMMETT PURYEAR, R. B. WADDLE and DENTON & FLIPPIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

The Chicago Veneer Company employed Thomas J. Jones as an electrician to wire its plant, and put in a system of electric lights. While he was doing the work which occupied him some weeks, Jones had his eye put out by a screwdriver which he was using, and brought this suit against the company and its foreman, Duberry, to recover for his injury. On the first trial of the case there was a verdict for the plaintiff in the sum of $5,-000.00. The court granted a new trial on motion of the defendants. The case was tried a second time resulting in a verdict in favor of Jones for $7,000.00. The court refused to grant a new trial, and entered judgment upon the verdict. The defendants appeal.

The proof for the plaintiff on the trial showed in substance these facts: Jones was working in a room under the charge of Duberry, and was placed by the superintendent under Duberry's orders. In wiring the room Jones had to place cleats upon the rafters to hold the wire. There was no ceiling and Jones used a ladder in doing the work where the machinery was not in the way, but at one end of the room he could not use the ladder on account of the machinery. Duberry then gave him a board and told him to place it on the joists and sit on the board while putting on the cleats. A line of shafting ran through the room, and from this line of shafting a belt ran to a veneer machine on the floor, the pulley over which the belt ran at the machine being only a few inches above the floor. The timbers which held the line of shafting were not well secured, and Duberry's attention having been previously called to the vibration in consequence of this, he had said in substance, "Leave it alone for the present." While Jones was working on the board as directed by Duberry and without any knowledge of the trouble or defect in the appliances, a pile of veneer was allowed to accumulate at the veneer machine about the belt. A piece of veneer was caught in the belt, and carried up with it to the shafting causing the shafting to jerk, and giving the joists on which Jones was working a violent vibration, which nearly threw Jones off the board on which he was sitting. He caught so as to prevent himself from falling, but in so doing the screwdriver, with which he was putting in a screw, was stuck in his eye, destroying the ball of the eye. He at once procured the best medical treatment, yet he lost not only that eye, but the sight of the other

eye was very seriously affected. He suffered very intensely and has been compelled entirely to give up his avocation as an electrician. These are the facts in substance testified to by Jones, and his testimony as to how the accident occurred is supported by two other witnesses who were present and saw it.

On the other hand the proof for the defendant is that Duberry simply told Jones where he wanted the lights to be, and that he left Jones entirely to follow his own course in doing the work without giving him any other directions; that he did not give him a board, or tell him to get on the joists or know that he was on them; that there was no defect in the timbers that held the 'ine of shafting, and that a piece of veneer going in the belt would not produce an appreciable vibration or jar; that there was no necessity for Jones to get on the joists, and he had gotten there for his own convenience without Duberry's knowledge; that in sitting on the board his head would be against the roof; and that his injury was due to the screwdriver accidently slipping off the screw when he thus had his head very close to it. The defendant introduced three or four witnesses who proved declarations by Jones tending to show that the injury thus occurred.

On this evidence the court refused to instruct the jury peremptorily to find for the defendants, and instructed them in effect as follows: 1. If Jones was employed by the veneer company to place in its plant electric wires and fixtures, and went to the place where he was directed to go by the company or its foreman, Duberry, to perform the work, then it was the duty of the company and its foreman to use ordinary care to have and keep the place where the plaintiff was at work in a reasonably safe condition so as not to increase the danger to his personal safety, while there engaged in the work, and if the timbers upon which he was located at work were in an unsafe condition, and the company or Duberry negligently permitted scraps of veneering to accumulate upon the floor about the belting and any of the scraps became entangled therein on account of close proximity to the belting, and the company or Duberry knew or by the use of ordinary care could have known of the defective condition of the timbers, and of the accumulation of scraps of veneering about the belting, and Jones did not know

of same and by reason of the scraps of veneering becoming entangled in the belting, the belting caused the timbers on which plaintiff was at the time located at work to vibrate in such a manner as not to be reasonably safe, and to throw the plaintiff and the screwdriver from the position in which they were then located, thereby causing the screwdriver to strike the plaintiff's eye, and destroy the sight of the eye, they should find for the plaintiff. 2. Although there was negligence on the part of the defendants as set out in No. 1, yet if the plaintiff himself failed to use ordinary care in the performance of his work, and but for this the injury would not have occurred, they should find for the defendants. 3. When Jones entered into the service of the defendants to wire their plant, he assumed all the ordinary risks and hazards incident to that employment, and if the injury complained of was the direct and natural result of some one or more of these risks or hazards, they should find for the defendants. 4. Negligence means a failure to use ordinary care. Ordinary care means such care as ordinarily prudent persons would be reasonably expected to use under like circumstances.

It is insisted for the defendants that the court should have instructed the jury peremptorily to find for them because the injury was the result of one of the ordinary hazards of the business or was an accident without fault on their part. We cannot concur in this view. When Jones went to work in the factory, and was placing the wires about the running machinery, he took the risk of all those things which were incidental to the operation of the machinery in the ordinary manner, and with ordinary care. He cannot complain of such vibration as was due to the ordinary operation of the machinery; but if the timbers had been allowed to get loose and the veneer was allowed to accumulate about the belt, and get in the belt, thus causing the shafting to give such a jerk as to throw a man off his balance on a board, and require him to catch to save himself from falling, this would not be a risk incident to the proper operation of the machinery, but a risk created by the negligence of the defendants. If Duberry knew that the timbers were loose, and knew that the veneer was liable to get in the belt, and give it a jerk of this sort, he should have warned Jones of the danger instead of giving him the board and sending him

up on the joists to do the work in ignorance of the peril attending its performance. No duty of inspection was imposed upon Jones; he had a right to assume that he could do safely what he was directed by Duberry to do, and there is nothing in the evidence to show that the risk was patent or so obvious that a man of ordinary prudence should have perceived the danger.

It is true that neither Duberry nor the company had any reason to anticipate that if the timbers were loose and a piece of veneer got in the belt, and gave them a jerk that Jones' screwdriver would be thrown into his eye; but that does not affect the question. They did have notice that such a jerk would endanger his safety, and when by their negligence, they placed him in peril, they cannot escape liability, because instead of being thrown to the floor by the vibration, he was struck by the screwdriver in the eye, when catching himself to prevent falling to the floor.

It is also insisted for the defendants that the court erred in refusing an instruction which it asked to the effect that if the plaintiff's injury was the direct and natural result of an accident and not the direct and natural result of the defendants' negligence, the jury should find for them. An accident is an unusual and unexpected event happening without negligence. Under the instructions of the court, the jury were only permitted to find against the defendants if there was negligence on their part, and in addition to this, they were told that if the plaintiff's injury was the result of the ordinary hazards of the business, they should find for the defendants. We are utterly unable to see that if the instruction asked by the defendants had been given, it would have added anything to the instructions which the court gave; for if the jury had concluded that the injury to the plaintiff was an accident incidental to the hazards of the work in which he was engaged, they would have found for the defendants just as readily under the instructions which the court gave, as under that which the defendants asked, and nothing would have been gained by multiplying instructions on the same point.

We do not see that instruction No. 1 was substantially prejudicial in requiring the jury to find against both the defendants, if either of them was negligent. If Duberry was negligent his negligence was the negligence of the company, and all the things re-

lied on to show negligence were relied on to show negligence in Duberry. It is insisted that Duberry was not negligent in allowing the veneer to accumulate about the belt, but we cannot assent to this; for he had charge of the room, and when he sent Jones up on the joists, it was his duty to use ordinary care for his safety, and not to allow anything to accumulate about the machine that would endanger Jones in the work to which he had assigned him. He had general charge of the whole room, including the machine; he had charge of the timbers which are alleged to have been loose and defective. So if there was any negligence, it was his negligence, and we do not see that the instruction could have been prejudicial. It may be that the instructions might have been fuller in presenting the defendants' side of the case, but in a civil case the court is not required to give the whole law of the case. It is incumbent upon the parties to ask such instructions as they wish given. All the instructions which the defendants asked so far as they were proper, were in effect, given in the instructions given by the court. The courts' instructions are not subject to criticism on the ground that they submitted to the jury both the law and the facts of the case. The jury were told in effect that under the law it was the duty of the master to use ordinary care to furnish the servant a reasonably safe place to do the work assigned him, and if the defendants had negligently failed to do this, and by reason of such failure, the plaintiff was injured, they should find for him, unless he was himself negligent in the performance of his duties, and but for this would not have been injured, or his injury was the result of one of the hazards ordinarily incidental to the business in which he was engaged, in either of which events they should find for the defendants. The instructions simply left to the jury the questions of fact.

We have read the transcript with care, and we do not see that there was any material error to the prejudice of the defendants in the admission or rejection of evidence. Complaint is made that the court refused to allow a witness to testify that the life tables which were introduced on behalf of the plaintiff are based on the expectancy of life of persons in good health and in employments not extra hazardous; but facts of common knowledge need not be proved. They are judicially taken notice of. (1 Greenleaf on Evidence, section 5.)

In I. C. R. R. Co. v. Houchins, 121 Ky., 526, speaking on this subject, we said:

"Such tables show only the probable continuance of life, and not the duration of ability to earn money. They show the probable duration of life of healthy persons who are insurable risks, and the court, when requested, should tell the jury what the table shows, and that it is to be considered by them, in connection with the other proof in the case, for what it may be worth, considering the plaintiff's state of health and circumstances, in determining the probable duration of his capacity to earn money."

The defendants did not request the court to instruct the jury as indicated, and cannot complain that the jury were not so admonished.

It is earnestly insisted that the plaintiff contradicted himself, and is contradicted by a number of other witnesses; that the weight of the evidence is with the defendant, and that the verdict should be set aside. But two juries have found the same way. The demeanor of a witness on the stand often goes far upon the question of his credibility. The jury saw and heard the witnesses, and upon the whole case we are unwilling to disturb their finding. The amount they allowed is not excessive in view of the fact that the plaintiff has lost one eye entirely and that the sight of the other eye is seriously affected. He was twenty-three years old; was earning $3 a day, and has been compelled to entirely give up his business as an electrician.

Judgment affirmed.