## J. B. WITTY v. STATE.

### No. 1917.   Decided February 19, 1913.

**1.—Murder—Insanity—Judgment in County Court—Presumption.**

Where defendant, about two months after the homicide, was adjudged insane in the County Court and sent to the lunatic asylum, and afterwards was either discharged or got out in some way and placed on trial for murder, said judgment was no bar to such prosecution, although it covered the time for ten or twelve months prior to the time of the adjudication, but it will be presumed that insanity continued to the time of the alleged offense, and unless such presumption is overcome by competent evidence, the accused is entitled to an acquittal.

**2.—Same—Rule Stated—Presumption—Insanity—Burden of Proof.**

Where insanity is once shown to exist, it will be presumed to continue, and a judgment in the County Court declaring defendant insane and that he had been insane for ten or twelve months, which overreached the time of the alleged homicide, is prima facie evidence of insanity both before and after its rendition, and shifts the burden of proof to the State. Following Hunt v. State, 33 Texas Crim. Rep., 252, and other cases.

**3.—Same—Charge of Court—Insanity—Burden on State, When.**

Where defendant was charged with murder, and the judgment of the County Court adjudging defendant insane, and that he had been insane for a time reaching over the date of the homicide, was introduced in evidence, it was reversible error to charge the jury that they could not be bound by said judgment, as it was found after the alleged shooting, and that it rested upon the defendant to show that he was insane at the very time of the homicide; but the burden was on the State to show the sanity of the accused at the time of the alleged offense, in the face of the judgment from the County Court finding him insane.

**4.—Same—Lucid Intervals—Rule Stated.**

Where defendant is once adjudged insane under proper proceedings, the presumption is that insanity continues, and the burden is upon the State to show sanity or lucid intervals at the time of the commission of the offense.

**5.—Same—Practice—Lunatico Inquirendo.**

Where defendant was adjudged insane some time before his trial for murder, and shortly after the commission of the offense, he should have been placed upon trial as to his sanity before he was placed on trial for murder. Following Guagando v. State, 41 Texas, 626.

**6.—Same—Evidence—Non-expert Testimony—Insanity.**

Where, upon trial of murder, it was not shown by the witnesses that they knew enough of the traits of life and disposition and other matters as to defendant's sanity to place them in the attitude to say whether he knew right from wrong, or to express an intelligent conclusion as to his sanity, their opinion as to his sanity is inadmissible. Following Jordan v. State, 141 S. W. Rep., 786.

**7.—Same—Expert Testimony—Insanity—Reproduction of Evidence.**

Where an expert witness had testified as to the insanity of the defendant in a former trial testing his sanity in the County Court, wherein the defendant was adjudged insane, and defendant was several months thereafter placed on trial for murder, and said witness was then dead, it was error to exclude said expert's testimony in said County Court which was offered in behalf of defendant; the facts on which the hypothetical questions to said expert were based being substantially the same on both trials. Following Smith v. State, 66 Texas Crim. Rep., 593, 148 S. W. Rep., 722.

Appeal from the District Court of McLennan.  Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the second degree; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*Williams & Williams,* for appellant.—On question that the judgment declaring defendant insane a few months before he was placed on trial for murder, and which reached over the time of the alleged offense, was a bar to the prosecution for murder: Lermo v. State, 68 S. W. Rep., 684; Hunt v. State, 33 Texas Crim. Rep., 252; Wisdom

v. State, 61 S. W. Rep., 926; State v. Reed, 7 So. Rep., 132; Ex Parte Trader, 24 Texas Crim. App., 393; Elston v. Jasper, 45 Texas, 409; Herndon v. Vick, 45 S. W. Rep., 852; People v. Farrell, 31 Cal., 576; Soules v. Robinson, 62 N. E. Rep., 999; Wooten v. State, 51 Texas Crim. Rep., 428.

On question of non-expert testimony and opinion of witness: Wells v. State, 50 Texas Crim. Rep., 499; Burton v. State, 51 id, 196; Williams v. State, 37 id, 348; McLeod v. State, 31 id, 331; Jordan v. State, 141 S. W. Rep., 786; Webb v. State, 9 Texas Crim. App., 490; Thomas v. State, 40 Texas, 61.

On question of reproduction of expert testimony: Glass v. Beach, 5 Vermont, 172; Smith v. State, 66 Tex. Crim. Rep., 593; 148 S. W. Rep., 722; First National Bank v. Wirnbach's Exr., 106 Pa., 39; Hunt v. State, 33 Texas Crim. Rep., 252; Wisdom v. State, 61 S. W. Rep., 926; Reyes v. State, 38 So., 257.

On question of court's charge on insanity: Merritt v. State, 39 Texas Crim. Rep., 70; Heckman v. Adams, 50 Ohio, 305, and cases above cited.

*C. E. Lane*, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for murder in the second degree, appellant being allotted a term of forty years in the penitentiary.

The homicide occurred on the 21st of July. The following September, or about two months after the homicide, appellant was regularly adjudged insane in the County Court and sent to the lunatic asylum. After remaining in the asylum for a considerable length of time he was either discharged or got out in some way, the record being silent in regard to the matter. He was subsequently placed upon his trial for the homicide. When the case was called for trial he filed a certified copy of the proceedings in the County Court adjudging him insane. The proceedings in the County Court were all in strict conformity to the provisions of the statute. The jury responded to these questions submitted by the court under the statute and found appellant insane, and that he had been insane for ten or twelve months. Upon these findings he was adjudged insane and sent to the asylum.

Appellant presents several propositions: first, that the judgment of the County Court adjudging him insane is a bar to the prosecution for the murder inasmuch as the verdict of the jury and judgment of said court covered the time and for ten or twelve months prior to the time of the adjudication, and the said court being one of competent jurisdiction, was authorized to determine that question, and, therefore, it was final and conclusive. Another proposition insisted upon is that should the judgment not be a bar to the prosecution for the homicide, it was presumptive or prima facie evidence of insanity,

and should be so used on the trial of his case for homicide. Another proposition contended for was, that the court should have, before placing defendant on trial under the indictment for murder, impaneled a jury to determine the question as to whether he was at the time of the trial insane, to the end that if he was he should not be' tried until his restoration to sanity so that he might be of service to his counsel in conducting the case, and further, in accord with the law, that no man who is insane shall be tried for his life or liberty while he is in that condition.

The first proposition is a serious one and fraught with much trouble. It is one to which we have given a great deal of attention, and it is not as clear as we wish it could be from adjudicated cases. The rule seems to be well settled, however, after the judgment of the court having inquisitorial jurisdiction, as in insanity cases, that the judgment is conclusive of the mental condition or status of the party at the time of its rendition, but presumptive or prima facie evidence of insanity as to the time covered by the finding of the mental status of the party prior to the adjudication. There are a great many authorities which have discussed this question. The rule seems to be fairly well settled, if not thoroughly, with reference to all overreached or over-reaching transactions, that is, those matters covered by the verdict of the jury or conclusion of the inquisition prior to the judgment and the mental condition at the time of the judgment, that the judgment is to be regarded as prima facie or presumptive evidence of insanity during the time covered by the verdict or finding of the inquisition. 22 Am. Dec., 655; 18 Am. Dec., 417; 34 Ohio St., 396; Greenl. on Ev., Secs. 550-556-356; 16 Am. & Eng. Ency. of Law, p. 606-607, and collated cases; 7 Ency. of Evidence, pp. 457-462-464-477. In the 16 American & English Ency. of Law, supra, it is stated: "In collateral proceedings a finding of lunacy upon an inquisition which has not been superseded is presumptive and not conclusive evidence of insanity, and when the record of inquisition is offered in evidence in another proceeding, its validity is not open to collateral attack." As authority in note 2 we find the above on page 606. Quite a number of English cases are cited in the note as well as United States and state cases, including Georgia, Kentucky, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, South Carolina, Texas and Vermont. The same work at page 607 states this rule: "So also where a transaction is overreached by the finding of the jury in lunacy proceedings, the inquisition is presumptive but not conclusive evidence of insanity at the time of such transaction," citing in support of this a great number of cases in England and America. These are to be found in note 2 on page 607 of said work. They are too numerous to be cited in the opinion. It is stated in the note, among other things, as follows: "As to acts done by a lunatic before the issuing of the commission and which are overreached by the retrospective finding of the jury, the inquisition is only presumptive but

not conclusive evidence of incapacity," citing L'Amoureuz v. Crosby, 2 Paige (N. Y.), 422; same case 22 Am. Dec., 655; Wheeler v. State, 34 Ohio St., 396; same case, 32 Am. Rep., 372; Lancaster County Nat. Bank v. Moore, 78 Pa. St., 407; same case, 21 Am. Rep., 24. So by a long line of cases it is held that in a criminal prosecution, if it is established that the accused was afflicted with general or permanent insanity prior to the alleged crime, it will be presumed that insanity continued to the time of the alleged offense, and unless such presumption is overcome by competent evidence, the accused is entitled to an acquittal. For cases see 4 Vol., Am. & Eng. Annotated Cases, p. 492. See also 24 Am. & Eng. Annotated Cases, p. 388. Those show a great number of cases.

The rule seems to be also well settled that where insanity is once shown to exist that it will presume to continue. It is also laid down that the verdict is conclusive that insanity exists at the time of the rendition of the verdict. This is in line with what has been above stated. See 10 Pleading & Practice, p. 1222, and notes. There are a great many cases throughout the Federal Union which might be cited in this connection, which sustain the proposition, first, where a judgment has been rendered or an inquisition has determined the fact that the party is insane, that that is conclusive at the time of the rendition of the verdict; second, that from that time forward the presumption is that insanity continues until it has been adjudicated otherwise; third, that at the rendition of the verdict and judgment all matters covered and overreached by it prior to the rendition of the judgment and ascertained by the verdict the same rule obtains, that is, that it is presumptive that insanity existed for the time covered by the verdict. Taking the above as correct, it would seem to be the law that at the time of the rendition of the verdict and judgment in the County Court determining that appellant was insane, it was conclusive of that matter at the time, and is presumptive evidence of insanity for the ten or twelve months prior to the rendition of the verdict included by the finding of the jury in the inquisition in the county court, and that it is also presumptive evidence that from the time of the verdict finding him insane, that insanity will continue subsequently. If these views are correct, and we believe they are, then the State was not concluded from the prosecution of the case by reason of the verdict of the jury in the County Court, but that that judgment would be presumptive or prima facie evidence of insanity both before and after its rendition. This being correct, it shifted the burden of proof from the defendant to the State, and the State was required to assume the burden of proof in order to show that appellant was sane at the time of the homicide. The general rule is that where insanity is set up in the trial of a case to avoid punishment for an act charged to be criminal, the presumption is that he is sane, and the burden of proof is on him to show by preponderance of evidence that he is insane. This is the rule in Texas, though not in all of the

states. It seems to be a much mooted question, and a very serious one, whether the rule is correct or not under the authorities of the United States. But such has been the rule in Texas. The rule, however, in Texas is equally well settled that wherever insanity has been shown by a judgment of the County Court in an inquisition or of de lunatico inquirendo the presumption is that he is insane at the time set out or covered by the verdict. of the jury if it overreaches and goes back in its finding as to the length of time the party has been insane, and it is equally the rule, that the presumption of insanity obtains from that time forward. The introduction of this evidence then would cast the burden upon the State to show that he was sane at the time of the homicide. This is so in all the cases in Texas so far as we are aware. The matter underwent a pretty thorough investigation by this court in Hunt v. State, 33 Texas Crim. Rep., 252. The opinion in that case was well considered and written by the late Presiding Judge Hurt of this court. That case, in substance, held that on a trial for murder the charge is correct, which in effect instructs the jury that where a judgment establishing insanity has been put in evidence, the burden is upon the State to prove beyond ᴀ reasonable doubt that insanity of which defendant was convicted was temporary, or prove that he had been cured of such insanity, otherwise insanity is presumed to have continued. This case was approved in Wisdom v. State, 42 Texas Crim. Rep., 79, and has been approved in quite a number of cases subsequent to the Wisdom case. See Wooten v. State, 51 Texas Crim. Rep., 428. We therefore hold, under the first question presented, that is, that the judgment of the County Court adjudging appellant insane is not a bar to the prosecution for murder as contended by appellant, but is presumptive evidence of insanity, and makes a prima facie case to be overcome by the State under the rules laid down.

This brings us to the second proposition, that is, if the judgment was not a bar to the prosecution for the homicide, that it was prima facie evidence of insanity at the time of its rendition and for the time covered by the verdict of the jury and judgment of the County Court. We hold this proposition to be sound and well taken. Growing out of the second proposition there are quite a number of questions raised and suggested in regard to the rulings of the trial court and charges given and refused. The court, among other things, instructed the jury that, in passing on the question of insanity at the time of the homicide, they should not be found by the verdict and judgment in the County Court which had been introduced before them in evidence finding him insane after the alleged shooting. The court also instructed the jury that the burden of proof was upon the defendant to establish the question of insanity, and that he must prove it at the very time of committing the act. Exception was reserved to these charges and special instructions asked to the contrary. Among other things, these requested instructions contained this: "You are further

instructed that the burden of proof is therefore on the State to prove by a preponderance of the evidence and beyond a reasonable doubt that at the time of said act the defendant's mental condition was such that he did know the character of his act and its consequences and had sufficient will power to refrain therefrom.'' There are other special charges submitting the same question in different forms, all looking to the one general proposition, however, that where insanity is shown to have existed by reason of the verdict and judgment of the county court, that the burden is on the State, on the trial for homicide, to show the sanity of the accused. We deem it unnecessary to repeat these charges. They sufficiently state the general proposition. The opposing propositions are sharply presented by the court's charges and those asked by appellant, and refused by the court, that is, the court instructed the jury to disregard the County Court judgment, and required defendant to prove by a preponderance of evidence that he was insane at the time of the homicide, whereas appellant insisted the burden of proof under the verdict of the jury and judgment of the county court was on the State to show that he was sane. The question of lucid intervals seems not to have entered into the discussion in the court below. Under the authorities, however, the burden would be on the state to show the lucid intervals. We, therefore, hold in regard to the second proposition, that the court committed error in the charges given and in refusing the special requested instructions.

Another proposition contended for was, the court should have, before placing appellant on his trial for the homicide, impaneled a jury to determine the question, whether he, defendant, was at the time of the trial insane, to the end, if he was, he should not be tried until his final recovery, and so that he might be of service to his counsel in conducting the case, as well as in accord with the humane provisions of the law which provide that no man who is insane shall be tried for his life or liberty while in that condition. If upon another trial of the case this question is presented as required by law, a jury should be impaneled, and if appellant is found insane, the case should be continued until appellant's mind has resumed its normal condition. This seems to have been the rule in Texas since Guagando v. State, 41 Texas, 626.

Another bill of exception recites that while Phil Hobbs was on the stand, the witness having testified only to a casual acquaintance with the defendant prior to the date of the homicide, and not having testified to any act or incident calling his attention to the mental status of the defendant, and the witness did not claim to have had any occasion or opportunity to know or consider the mental status of the defandant, all of which is made to appear by the testimony of the witness in the statement of facts, which is referred to and made a part of the bill, the State's attorney, referring to the morning after the homicide when the witness testified that he was there for a short while in the jail and saw the defendant and saw his friends coming

and going and conversing with him, propounded to the witness the following question: "Did the defendant say anything that morning (the morning after the homicide) that indicated to you that he did not know right from wrong?" Various objections were urged to this, which being overruled, the witness answered, "Not that I noticed, no sir." The bill is approved with the qualification that the witness told all that he knew about the conduct of defendant, and was cross-examined by the attorney for the defendant about all the conversations that took place the morning after the homicide, the time which he is being interrogated about, and after the witness had related the entire conduct of defendant the county attorney was then permitted to ask him whether or not he saw anything in the conversation or in the conduct of the defendant that indicated to him that he did not know right from wrong, and the attorneys for the defendant had ample opportunity, of which they availed themselves, to cross-examine the witness about the matter about which he testified.

Another bill recites that the witness, John Pool, had testified for the State that he was a bartender and had seen the defendant occasionally; that he had never had any special occasion to observe the defendant or consider anything about his mental condition, and was not an expert, and only knew defendant when he saw him, but not personally acquainted with him, and had had no dealing with him. This witness further testified that on the day preceding the homicide the defendant came into his place of business about six o'clock in the afternoon and took a drink and picked up a paper and began looking at it, and the witness left at that time. The county attorney then propounded this question to the witness: "State whether or not there was anything in his conduct at that time that indicated that he was a crazy man, and not able to distinguish the right from the wrong?" Objection was urged to this, and the witness finally answered, "I noticed no difference in him." A similar qualification by the judge was appended to this bill as to the former one.

Nat Harris, the assistant county attorney, testifying for the State, stated he was not an expert in any way on insanity. The bill further recites that the issue of insanity was raised by the testimony in the case, and there was testimony before the court and jury on both sides of the question. While this witness was on the stand testifying in behalf of the State, the county attorney propounded the following questions: "You say you were with Mr. Witty about an hour and a half after the killing? A. Yes, sir. Q. What, if anything, did he do while you were with him that indicated that he was a crazy person and did not know right from wrong?" Various objections were urged, which were overruled, and the witness answered, "He never did anything to indicate to me but what he was sane."

There are a number of these bills of exception, but those above are mentioned as samples showing the character of testimony which was introduced from non-expert witnesses. The objections were properly

and timely urged, and should have been sustained. Under no rule or decision was this character of testimony admissible. These witnesses do not show themselves in position to know. Sufficient facts are not stated by the witnesses to show they knew enough of the traits and life and disposition and other matters pertaining to the defendant to place them in the attitude to know whether he was sane or insane, or whether he knew right from wrong, or to express any sort of intelligent conclusion. This question has been so often discussed we deem it unnecessary to review the question in the light of those decisions. It was clearly inadmissible, as shown by the record. This character of testimony is admissible provided a sufficient basis or predicate is first established. See Jordan v. State, 141 S. W. Rep., 790.

Another bill recites that Dr. Wallace had testified in the trial for lunacy in the County Court that he was an expert of wide reputation and of great experience, and since giving his testimony had died. The bill is a lengthy one, reciting the testimony of Dr. Wallace taken down by the stenographer in the County Court on the trial of appellant for insanity. As before stated, Dr. Wallace is shown by the bill to have been an expert on insanity, and for years superintended one of the lunatic asylums of the State of Texas, and was a physician and alienist of wide experience and varied information and knowledge. Then follows quite a lengthy stenographic report of the evidence of Dr. Wallace. This evidence was excluded when it should have been admitted if the facts on which the hypothetical questions were based are substantially the same on this trial as on the trial for insanity. The issue in the County court was the sanity or insanity of the appellant. The testimony of Dr. Wallace was given on that trial. The identical issue as to his sanity covering the time of the homicide was an issue in this case. It is not necessary here to discuss the constitutional question of confronting the accused with the witnesses against him, for it is not raised. Dr. Wallace's evidence was offered here in his behalf. So it is unnecessary to notice any constitutional question. Under the authorities this testimony was, we think, admissible. A kindred question was passed on by this court in the recent case of Smith v. State, 66 Texas Crim. Rep., 593, 148 S. W. Rep., 722, from the same county. It is unnecessary to review this question. This testimony was admissible.

There are other questions in the case in regard to the introduction and rejection of testimony. The court will be governed by the rules already announced in these matters if the questions should arise upon another trial.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*