## MYERS v. JEFFERSON STANDARD LIFE INS. CO. (No. 10920.)*

(Court of Civil Appeals of Texas. Fort Worth. Jan. 24, 1925. Appellee's Rehearing Denied March 7, 1925. Appellant's Rehearing Granted March 7, 1925. Appellee's Second Rehearing Denied April 4, 1925.)

**1. Insurance ☞349(1)—Anniversary of policy as respects computation of period for payment of premiums held date of its delivery to insured.**

Where policy of life insurance did not become effective until approved by insurer's medical director at its home office and delivered to and received by insured during his lifetime in good health, anniversary of policy was on date of its delivery as respects time when it would lapse for nonpayment of quarterly premium.

**2. Insurance ☞602—Beneficiary held entitled to recover principal sum of life policy plus statutory damages.**

Where insured was not in default of payment of quarterly premium at time of his death, beneficiary in action thereon was entitled to face of policy plus 12 per cent. damages authorized by Rev. St. art. 4746.

**3. Insurance ☞245—Failure of insured to pay quarterly premiums after erroneous notification of his default held not waiver or abandonment of policy.**

Where insured was not in default in payment of premium at time of notification of forfeiture for nonpayment thereof, or at time of his death, failure of insured to pay premium after receiving such notice *held* not waiver or abandonment of policy.

**4. Insurance ☞529 — Death of insured at hands of insane person held "accidental," within double indemnity clause of life insurance policy.**

Death of insured at hands of insane person *held* "accidental," within meaning of clause providing double indemnity for death from bodily injury directly or independently of other causes effected through external, violent, or "accidental" means (quoting Words and Phrases, Second Series, Accident—Accidental).

**5. Insurance ☞529—Insured's death at hands of insane person held not to have resulted from bodily injury inflicted by another "person" within double indemnity clause.**

If insured was killed by insane person, his death did not result from bodily injury inflicted by another person so as to defeat recovery of double indemnity under policy which excluded bodily injury inflicted by another "person"; "person" having been used in generally accepted sense, which excludes an insane person.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Person.]

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Hazel Hope Myers against the Jefferson Standard Life Insurance Company.

Judgment for defendant, and plaintiff appeals. Reversed and rendered on rehearing.

Stone & Guleke, of Amarillo, for appellant.

Moses & Rowe, of Fort Worth, for appellee.

CONNER, C. J. This is an appeal from a judgment denying the relief sought by appellant in a suit instituted by her to recover stipulated sums of money alleged to be due by virtue of the terms of a policy of insurance issued for her benefit by the appellee company, dated September 7, 1921, and covering the life of plaintiff's husband, Clarence Earl Myers, who was shot and killed by one Goldie White, an alleged insane person, on March 28, 1923.

The question of whether the court properly denied the plaintiff's prayer for recovery involves the construction of certain provisions hereinafter noticed of the contract of insurance. The facts are undisputed. Upon due application and in consideration of "the premium of ninety-one and 29/100 dollars, receipt of which is hereby acknowledged, and of the payment of a like sum each year on each anniversary hereof until thirty-two full years' premiums have been paid, or until prior death of insured, should that happen sooner, does hereby insure Clarence Earl Myers, hereinafter called the insured, in the sum of three thousand dollars."

The appellee company in due order and time issued and forwarded to its agent the policy declared upon. The policy bore the date of the application, to wit, September 7, 1921, but was not actually delivered to the insured until October 4, 1921, at which time he paid the first annual premium in cash, and by note later paid in accordance with its terms.

The policy contained the following further provisions deemed pertinent at this point, to wit:

"In lieu of the premium stated above, the company will accept semiannual installments of $47.46, or quarterly installments of $24.18, but the payment of any such installment shall not continue this policy in force beyond the date the next installment is due. * * * This policy does not take effect until the first annual premium shall have been actually paid during the lifetime and good health of the insured. * * *

"After this policy shall have been in force one full year from the date hereof it shall be incontestable for any cause except for nonpayment of premium.

"Should this policy cease and determine for nonpayment of any premium, it may be reinstated at any time by the payment of the defaulted premiums with six per cent. interest added and by furnishing evidence of insurability satisfactory to the company.

"In the payment of any premium under this policy, except the first, a grace of one month (not less than thirty days) will be allowed, sub-

---

ject to an interest charge of six per cent. * * *

"In case of default in the payment of any premium or installment of premium or note given for any premium or portion thereof, this policy shall cease and determine, and the payments received herein shall become the property of the company, except as specified on second page hereof.

"The insurance provided for in this policy is based upon the payments of premiums annually, in advance."

The appellee admitted in its answer that the first annual and one quarterly premium were paid, which, it contends, together with the 30 days of grace allowed under the terms of the policy, continued its obligatory force until January 7, 1923, and no longer, at which time, there being no further payments of premiums, the company declared the policy forfeited, and sent to the insured for execution an application for reinstatement, to which the insured was, within a specified time, entitled under the terms of the policy and the company's rules. The application for reinstatement of the policy sent to the insured, and which he was required to execute in order to be reinstated, was dated January 30, 1923, and reads as follows:

"Jefferson Standard Life Insurance Company, Greensboro, North Carolina.

"Application for Reinstatement of Lapsed Policy.

"Policy No. 149081. Name, Clarence E. Myers. Amount, $3,000.

"Part I.

"To be Filled in and Signed within Ninety Days from Due Date of Premium.

"Whereas, policy above numbered, lapsed by reason of nonpayment of premium, or note, due on December 7, 1922, I hereby make application for reinstatement of said policy, and warrant answers to questions below to be true.

"(1) What sickness, ailment, or injury since the day of examination for above-numbered policy, have you had? (Disease or injury.) (Date.) (Duration.)

"(2) Have you been associated during the past three years with a person who has had consumption, or have you been living or staying in a dwelling, store or office occupied during said past three years by such diseased person? (Date.) (Duration.)

"(3) Have you been attended or prescribed for by any physician since examination for above policy? (Disease or injury.) (Date.) (Name and address of doctor.)

"(4) Have you ever been declined for insurance by any company or association? (Company.) (Approximate date.) * * *

"(7) Do you warrant and declare that you are of sound constitution, temperate, and in good health?"

"I hereby ratify and confirm all the statements made in the application upon which the above-numbered policy was issued, except such as are modified by representations or agreements herein contained, and hereby make the said application and this application for rein-

statement alike parts of the contracts of insurance, and agree that in the event of self-destruction, whether sane or insane, within one year from the date of approval by the company of this application for reinstatement, the amount payable as death benefit under said policy shall be equal to the premiums paid on said policy, and no more.

"I further agree that said policy shall not be revived until this application shall be approved by the medical director of the company, and that, if any of the statements of representations contained herein shall prove to be incomplete or untrue, then this reinstatement shall be ipso facto null and void.

"I further agree that the acceptance of this certificate and the reinstatement of said policy shall not be taken as a precedent for future similar action on the part of the company.

"Part II.

"Report of Examining Physician.

"(Applicant's full name.) (Address.) (Date of birth.) (Age.)

"(1) Is applicant related to you by blood or marriage? (If so, let some one else make this examination.)

"(2) Does his health show any impairment from any previous habit, illness or injury?

"(3) Has he any impairment of sight or hearing?

"(4) What is his weight?

"(5) What is his height?

"(6) Circumference of chest under vest, at rest?

"(7) Circumference of abdomen?

"(8) Are percussion and auscultation normal over both lungs?

"(9) Is heart's action regular and sounds normal?

"(10) What is pulse rate standing?

"(11) Is there any evidence of disease of liver or spleen?

"(12) Do you find the function of any organ abnormal? (If so, explain.)

"To be taken in all cases:

"(13) Blood pressure. (Name instrument used.)

"(14) Urinalysis: Specific gravity? Reaction? Albumin? Sugar?

"(15) Do you recommend the applicant for reinstatement?"

The actuary of the company testified that:

"The Jefferson Standard Life Insurance Company would not have reinstated the policy, except upon compliance with the conditions set forth in said application for reinstatement."

There is no evidence showing, or tending to show, that the insured paid or offered to pay any premium after his payment of the quarterly premium on October 4, 1922, or that he complied with, or attempted to comply with, the requirements of reinstatement application.

Upon the foregoing state of the record, it is insisted by the appellee company, in support of the judgment below, that the premiums under the terms of said policy fell due on the specific date of September 7th of each year after the date of the policy, or

inasmuch as the premiums subsequent to the initial premium had been by insured elected to be paid quarterly, that they were payable on the specific dates of September 7, December 7, March 7, and June 7 of each year, and that those specific dates were of the essence of the contract, and that a failure to pay on those specific dates defeated the policy.

It is the contention of appellant, on the contrary, that the policy under its terms, and under the terms of the application therefor, did not take effect as a contract until October 4, 1921, upon which day the policy was actually delivered to the insured and the first year's premium paid by him, and that hence from that date the insured was entitled to one full year's protection, to wit, until October 4, 1922, which was continued by the insured's quarterly payment and the 30 days of grace allowed him under the terms of the policy, until February 4, 1923. It is apparent that if appellee's contention is correct, the policy under consideration had lapsed and was of no force and effect at the time of the death of insured. But that if appellant's construction of the contract is correct, then the appellee company was not authorized to forfeit the policy at the time it did; that by reason of such premature forfeiture and requirements for reinstatement, the insured was excused from tendering further quarterly payments of premium until February 4, 1923; and that hence at the time of insured's death the policy was effective and the appellant entitled to recover.

[1] Hence, in the presentation of the case to this court, the views of each litigant seems to be expressed by the following statement from appellee's brief:

"The facts in the record are practically undisputed, and present but one question to be determined by this court, and that is whether the time for the payment of premiums, under said policy, should be computed from its date or from the date of its delivery to the assured."

The cases cited by the parties in support of their several contentions do not seem to be in entire harmony, but we have been relieved from a discussion of the authorities referred to by the fact that since the submission of this case, our attention has been called to the case of Jefferson Standard Life Insurance Company v. Baker, decided by the Dallas Court of Civil Appeals, writ of error refused, and reported in 260 S. W. 223. In that case the policy was dated on the 15th day of September, 1920, but was not delivered until the 2d day of October, 1920, and insured died on the 19th day of October, 1920. The court, after quoting provisions of the policy there under consideration similar to those in the case before us, thus states the question for its determination:

"It is the contention of appellant that because the date of the application for the policy was the 15th day of September, 1920, the date the policy bore, and which was accepted and retained by Thee Zack Baker until his death, there being no proof of any fraud or mistake as to the date of the policy, the 15th day of September was the anniversary of the policy, therefore the second premium fell due on the 15th day of October, 1921, and, as the premium was not then paid, and never was paid, the policy forthwith lapsed.

"This involves the only questions necessary to be discussed in order to dispose of this appeal, to wit, were appellees estopped to question the date borne by the policy of insurance, September 15, 1920, as the true date because same was received with that date by Thee Zack Baker and retained by him until his death without objection being made thereto? Did the word 'anniversary' as used in said policy, viz., 'and of the payment of a like sum each year on each anniversary hereof until twenty full years have been paid,' have reference to and mean the date borne by said policy, to wit, the 15th day of September, or to the recurrence of the date on which said policy took effect through the issuance and delivery of same to Thee Zack Baker during his lifetime and while in good health?"

The court further said:

"To sustain appellant's contention on either of said questions would be to defeat appellees' cause of action purely on the ground of forfeiture, which is by no means looked upon with favor by the courts. The rule being that 'if policies of insurance contain inconsistent provisions or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain, rather than forfeit, the contract.'"

To sustain the rule of construction stated which is applicable alike in the case before us, numerous authorities are cited, and after a discussion of a phase of that case not involved here, the court further said:

"It is apparent from the language found in the contract of insurance that the words 'anniversary hereof,' mean 'annually from now,' or 'annually from henceforth,' and that 'from now,' or 'from henceforth,' cannot refer to a time prior to the birth of the instrument, but does refer to the time from its delivery, or at least from a date not before the time it came into existence. By the very terms of the contract it did not become a binding obligation between the parties whereby the appellant became the insurer of the life of Thee Zack Baker until said policy had been in fact approved by the final medical examination of appellant's medical director at its home office and the policy delivered to and received by the insured during his lifetime while in good health. Therefore the anniversary date of the contract of insurance was the second day of October following the date of the delivery of said policy, October 2, 1920. The anniversary date of said policy being the 2d day of October, 1921, and adding to this the 30 days of grace, said policy was continued in force until November 1, 1921, and was in force on the 19th day of October, 1921.

"Even conceding that the language under investigation is susceptible of more than one construction in determining the rights of the parties, that interpretation which will prevent a forfeiture and secure the enforcement of the obligation so as to protect the beneficiaries' in the policy of insurance should be accepted and adhered to as the correct rule of decision. This rule is only intensified by the fact that the language employed was selected by appellant, the author of the instrument as prepared."

The court concluding as follows:

"Nowhere in the policy is it stated that the insurance shall run from one definite date to another definite date, or that the premium shall be paid on a definite date and the anniversary of that definite date.

"We therefore conclude that, as appellant in its policy undertook to limit its liability until the actual issuance and delivery of an annual policy providing for one month's grace, the insured was protected against forfeiture for 13 months from its execution and delivery, and therefore the judgment of the court below should be affirmed."

[2] As stated, a writ of error was denied by our Supreme Court in the case from which we have just quoted, and we accordingly conclude, regardless of authorities cited in the brief which may be said to be of a contrary holding, that under the terms of the policy under consideration and the undisputed proof in the case, and for reasons hereinafter given, appellee, at all events, was entitled to recover the principal sum of $3,000 on the policy, together with 12 per cent. damages thereon authorized under article 4746 of our Revised Statutes. The article of the statutes would also authorize under the facts the recovery of a reasonable attorney's fee for the prosecution and collection of the policy; but we are cited to no agreement or testimony showing what would be a reasonable attorney's fee, and we have found no such agreement or testimony. We accordingly do not feel at liberty to assess attorney's fee.

[3] In opposition to the conclusion just declared, it may be suggested that the failure of insured to pay quarterly premiums, after he had been notified of the forfeiture of his policy and requested to execute the reinstatement application hereinabove set out, was inexcusable and had the effect of a waiver or abandonment of his policy. But we think not so. At the time of his death, he had had under the terms of his policy some five or six days in which without reinstatement he could by the payment of a quarterly premium have continued the policy's binding effect. Moreover, neither waiver nor abandonment was pleaded by appellee, and it is to be remembered that the forfeiture was declared while the policy was yet by its terms under the facts still in force. The forfeiture amounted to a breach or repudiation of the insurance contract, and by the requirements of the reinstatement application terms were imposed upon the insured in violation of the agreement, the policy providing that it was incontestable after the expiration of one year except for the nonpayment of premiums, and the reinstatement application, as will be seen by reference thereto, required the insured to state what sickness, ailment, or injury he had had since his original examination, and whether he had been during the past three years associated with a person who had consumption or stayed or lived in a dwelling or other place occupied by such a diseased person, or whether he had been examined by any physician since his original examination or been declined for additional insurance; and was required to state whether he was of sound constitution, temperate habits, and in good health; and made to agree that in the event of self-destruction, whether sane or insane, within one year from the date of approval by the company of the application, that then in that event the amount payable as a death benefit should only be equal to the premiums paid. An examination by a physician was also required, and there was evidence on the trial that during the time he was required to execute the reinstatement application his health had become materially affected. The testimony of two physicians in answer to a hypothetical question based upon the testimony of insured's wife, relating to the condition of his health during several months preceding his death, tended very strongly to show that had the insured and the examining physician made truthful answers to the questions propounded in the application, it would certainly have been rejected by the company, and we think the insured had the legal right to refuse to comply with the reinstatement requirements and was excused from tendering further payments of premiums after notification of the forfeiture of his policy.

May on Insurance, § 358, has this to say:

"Payment or tender of premium is not necessary where the insurers have already declared the policy forfeited or upon any act which is tantamount to declaration on their part that they will not receive it if tendered."

The same rule is laid down in 2 Joyce on Insurance, § 1123, wherein the author says:

"Where the policy is wrongfully forfeited or canceled as for nonpayment of premiums, no obligation rests upon the assured to tender subsequent premiums."

To the same effect, see 25 Cyc. 925; N. Y. Life Ins. Co. v. Lahr (Ind. Sup.) 134 N. E. 662; Bacon on Life Insurance, § 609; Phœnix Life Insurance Co. v. Hinesley, 75 Ind. 1; Sourwine v. Supreme Lodge, K. of P., 12 Ind. App. 447, 40 N. E. 646, 54 Am. St. Rep. 532. See, also, the case of Te Bow v. Washington Life Insurance Co., 59 App. Div. 310, 69 N. Y. S. 289, which was affirmed by the New York Court of Appeals in 172

N. Y. 623, 65 N. E. 1123, wherein the court says:

"A declaration that a policy had lapsed, and can be reinstated by furnishing a satisfactory medical certificate, imports of necessity a denial of the right to reinstatement except upon the condition named. With the unauthorized cancellation of the policy, and a refusal to accept the premium except upon a condition which was unauthorized, the authorities are uniform * * * that the defendant is estopped from claiming as a defense to this action that the premium has not been paid."

See, also, Wayland v. Western Life Indemnity Co., 166 Mo. App. 221, 148 S. W. 626, by the Missouri Court of Civil Appeals; Lee v. Missouri State Life Ins. Co. (Mo. App.) 238 S. W. 859; Knott v. Security Mutual Life Ins. Co., 161 Mo. App. 579, 144 S. W. 184.

[4] We deem it proper to notice one further question presented by the record. The policy contained a double indemnity provision which reads as follows:

"The company will pay the beneficiary in full settlement of all claims hereunder double the face amount of this policy if, during the premium paying period, and before default in the payment of any premium, and before waiver of any premium on account of disability, and before any nonforfeiture provision is in effect, the death of the insured results from bodily injury within ninety days after the occurrence of such injury, provided death results directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means while the insured is sane and sober; except these provisions do not apply if the insured shall engage in military or naval service or any allied branch thereof, in time of war, or in case death results from bodily injury inflicted by another person or by the insured himself, or from engaging in aeronautic or submarine operations, either as a passenger or otherwise, or from any violation of law by the insured, or from a state of war or insurrection, or self-destruction, whether during the first policy year or afterward."

As already stated, the insured was killed by Goldie White on the 28th of March, 1923, and on the trial below the following agreement relating to this matter was made in open court:

"It is agreed on April 3, 1923, there was entered a judgment declaring Goldie White, the person who shot and killed the deceased, Clarence Earl Myers, insane, and not a rational person; that she was adjudged insane on that date by the county court of Tarrant county, Tex., and that by reason of the adjudication of insanity of Goldie White, she has never been indicted or tried for the killing of Clarence Earl Myers."

In order to recover the double penalty under this section of the policy, it would be necessary for appellant beneficiary to prove, among other things, that the death of the deceased resulted "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means" while the insured "was sane and sober," and that such death did not result "from bodily injury inflicted by another person" within the meaning of the exception that so reads in the double indemnity provision of the policy. For the purposes of our present discussion, and for that purpose only, we will assume that Goldie White was insane at the time that she shot and killed the insured. We have not been cited to nor found any decided case precisely in point. In volumn 1 of the Second Series of Words and Phrases, p. 32, under the title of "Accident-Accidental," we find the following definitions of the term "accident":

"An 'accident' is 'an undesigned contingency; a happening without intentional causation; that which exists or occurs abnormally; something unusual or phenomenal; an uncommon occurrence.' Patterson v. Missouri Pac. Ry. Co., 77 Kan. 236, 94 P. 138, 141, 15 L. R. A. (N. S.) 733 (quoting and adopting the definition in State v. Hansford, 76 Kan. 678, 92 P. 554, 14 L. R. A. [N. S.] 548).

"An 'accident' is such an unexpected casualty as occurs without any one being to blame for it; that is, without anybody being guilty of negligence in doing or permitting to be done, or omitting to do, the particular things that caused such casualty. Briscoe v. Metropolitan St. Ry. Co., 222 Mo. 104, 120 S. W. 1162, 1165; Chicago Veneer Co. v. Jones, 143 Ky. 21, 135 S. W. 430, 432.

"An 'accident' may be defined as an event happening unexpected and without fault. Indiana Union Traction Co. v. Long, 176 Ind. 532, 96 N. E. 604, 608, or as 'an event happening without the concurrence of the will of the person by whose agency it was caused.' State v. Matheson, 130 Iowa, 440, 103 N. W. 137, 140, 114 Am. St. Rep. 427, 8 Ann. Cas. 430.

"Webster defines an 'accident' to mean 'literally a befalling; an event that takes place without one's foresight or expectation; an undesigned sudden and unexpected event; chance, contingency, often an undesigned and unforeseen character; a casualty or mishap.' Young v. Railway Mail Ass'n, 126 Mo. App. 325, 103 S. W. 557; Harrod v. Hammond Packing Co., 125 Mo. App. 357, 102 S. W. 637; Erickson v. Ladies of the Maccabees of the World, 25 S. D. 183, 126 N. W. 259.

"Death by 'accident,' within an accident benefit certificate, means death which is not the natural and probable consequence of the act causing it. Beile v. Travelers' Protective Ass'n of America, 155 Mo. App. 629, 135 S. W. 497. An event which takes place without one's foresight or expectation, and which proceeds from an unknown cause, or an unusual effect of a known cause not within the expectation of the person injured. Phœnix Accident & Sick Ben. Ass'n v. Stiver, 42 Ind. App. 636, 84 N. E. 772.

"The word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or

cause must be accidental. Death resulting from voluntary physical exertions or from intentional acts of 'insured is not accidental, nor is disease or death caused by the vicissitudes of climate or atmosphere the result of an accident; but where, in the act which precedes any injury, something unforeseen or unusual occurs which produces the injury, the injury results through accident. Schmid v. Indiana Travelers' Acc. Ass'n, 42 Ind. App. 483, 85 N. E. 1032; Ludwig v. Preferred Accident Ins. Co. of N. Y., 113 Minn. 510, 130 N. W. 5; Young v. Railway Mail Ass'n, 126 Mo. App. 325, 103 S. W. 557.

"The term 'accident,' as used in accident insurance policies, should be construed most strongly against the companies, and be defined according to the ordinary and usual understanding of its signification. 'Any unusual and unexpected event attending the performance of a usual and necessary act,' whether the act be performed by the party injured or by another, is ordinarily and usually understood to be an event which happened by accident. Young v. Railway Mail Ass'n, 126 Mo. App. 325, 103 S. W. 557.

"Where a man is so afflicted that he will die from such affliction within a very short time, yet if, by some accidental means, his death is caused sooner, it will be a death from 'accident' within the meaning of the terms of an accident insurance policy. Hooper v. Standard Life & Accident Ins. Co., 166 Mo. App. 209, 148 S. W. 116."

It is to be noted that under the definitions given, if the happening is "without intentional causation," or which occurs "abnormally," it comes within the meaning of the term "accident." If Goldie White was insane, as we have assumed, at the time she killed the insured, she was not, under our laws, guilty of negligence or at fault; she was incapable of exercising sound judgment or entertaining a conception of the consequences of her act. An insane person may be likened to a wonderful mechanical formation clothed with potential destructive power subject to be called forth by some trivial occurrence, some gust of passion, unfounded fear, or fancied wrong. Death injuries by such an one may be inflicted without intelligent cause at the most unexpected times and under the most unexpected circumstances, and such injuries so caused would seem to be as truly "accidental" as if caused by the insensate wings of an ancient windmill set in motion by some sudden gust of wind, or the revolving blades of an aeroplane set in motion by an unexpected application of power by one without knowledge of the dangerous proximity of another.

[5] We are of the opinion that in such event, construing the policy as we should do liberally in favor of the beneficiary, the death of the insured in the present case was "accidental," within the meaning of the section of the policy quoted. Nor do we think that in such case, so construing the policy, it should be said that the death of the insured resulted from bodily injury "inflicted by another person," within the meaning of that exception to double liability.

Mr. Webster, in his Unabridged Dictionary, gives the following definitions of the word "person":

"(1) A human being as including body and mind; a man, woman or child, an individual.

"(2) Any being having life, intelligence, will and separate individual existence; distinguished from an irrational brute, an inanimate thing."

In re Kehler (D. C.) 153 F. 235-237, it was held that under the Bankruptcy Act providing that any natural person may be adjudged an involuntary bankrupt, the word "person" does not include a lunatic.

In the case of Mutual Life Insurance Co. v. Walden (Tex. Civ. App.) 26 S. W. 1012, it was held by this court, after a review of the authorities by Mr. Justice Stephens, that a policy containing the clause, "I also warrant and agree that I will not die by my own act within the period of two years from the issuance of said policy," was not rendered contestable by the fact that the deceased designedly took his own life within that period, if it appeared that when the deceased took his life his reasoning faculties were so impaired that he was unable to understand the consequences of his own act, or was impelled thereto by an irresistible insane impulse.

From a time immemorial, an insane person has been deemed civilly dead. His contracts are without legal force or effect. He is without power to dispose of his estate by conveyance, or will. He is not subject to punishment for crime of any degree. All on the ground that he is abnormal, that he is incapable of self-control—without power to correlate facts, conditions, or circumstances, and estimate consequences. Such a being is not a "person" in the ordinary and general acceptance of the term, and it is in such sense we must assume the term was used by the insurance company which wrote the contract with power to choose the terms in which it is expressed. Had the company so desired, it had the right to make the exception under consideration more specific and extensive, by providing that the contract for double indemnity should not apply in case death of the insured resulted from bodily injury of another person whether sane or insane. In such case, if the appellant accepted the policy with such limitation, he would, of course, be bound by the limiting terms. But written as we find it, we think the acceptance of the insured must be assumed to have been upon the faith that the term "person" was used in its generally accepted sense, and that his beneficiary would not be deprived of the benefit of double insurance in case his death was suddenly caused by the violent and wholly un-

expected and irresponsible act of an insane person.

We hold, therefore, that if Goldie White was insane at the time she shot and killed the insured, the plaintiff beneficiary was entitled to recover under the double indemnity section of the policy. We have felt some hesitation, however, in saying that it undisputably appears that Goldie White was insane at the very time she shot and killed the insured: While the agreement of appellee that the only question for our determination was that first discussed might imply that the insanity of Goldie White existed at the time of her destructive act, but there is no finding by the trial court to that effect, and it is not clear that the agreement relating to the matter is to be given such effect. By the terms of the agreement relating to the subject, the judgment declaring Goldie White insane was April 3, 1923, some five or six days after the death of the insured, and that by reason of the adjudication of insanity Goldie White has never been indicted or tried for the killing of insured.

In the case of Witty v. State, 69 Tex. Cr. R. 125, 153 S. W. 1146, Witty was charged with murder. His defense was insanity at the time of committing the homicide. He was adjudged insane about two months after the homicide, and it was further found by the verdict of the jury that he had been insane for ten or twelve months prior thereto. It was held in an opinion by Davidson, Presiding Judge, that the judgment and verdict prima facie established insanity of the defendant at the time of the homicide. The court recognized the well-established rule that the judgment as to the mental condition of the defendant at the time the judgment was rendered was conclusive, but only presumptive or prima facie evidence of insanity as to the time prior and subsequent to its rendition. The rule that a condition of affairs shown to exist at a given period will authorize the presumption that such condition continued until it be otherwise shown, in this case would authorize the conclusion that from the judgment, and until shown otherwise, Goldie White was insane. But we know of no case in which the presumption has been made to apply to a date anterior thereto, except in the case that we have just referred to, and in that case there was a verdict of the jury overlapping the judgment. In other words, it appeared from the finding in that case that on the inquisitorial examination which resulted in the judgment the subject had been insane some ten or twelve months prior thereto. The agreement of counsel in this case does not show that Goldie White was insane at the very date of her killing, unless it is to be implied from the statement in the agreement that by reason of the adjudication of insanity she has not been indicted or tried for the killing of the insured. Under our criminal procedure, even though she had been entirely sane at the time she shot and killed the insured, if she subsequently and soon thereafter was found and adjudged to be insane, and the facts tended to show that there was no probability of her recovery, it can easily be conceived that there would be a failure to indict or try her for the offense; it being expressly provided in this state that no person shall be tried or convicted while insane.

We have accordingly concluded that the judgment below should be reversed, with instructions to the trial court to enter judgment in favor of appellant for the sum of $3,000 with 12 per cent. damages allowed by our statutes and interest thereon at the rate of 6 per cent. per annum from and after the 29th day of October, 1923, less the unpaid quarterly premiums up to February 4, 1923, and to further proceed and determine the issue of whether Goldie White was insane at the very time she shot and killed Clarence Earl Myers, and if it be so found, the trial court shall then further adjudge in favor of the appellant the additional indemnity provided for by the policy, together with 12 per cent. damages thereon and all costs of suit.

### On Motion for Rehearing.

We have carefully considered appellee's motion for rehearing and to certify, but, as we think, find no sufficient reason to modify or change our conclusion on the legal questions discussed in our original opinion. Appellee, however, insists that we did not give the intended effect to the agreement on the trial below, copied in our original opinion, relating to the insanity of Goldie White. Relating to this subject, appellee has this to say:

"We believe the court erred in construing the stipulation of counsel with reference to the matter of Goldie White, the slayer of the assured Myers, being insane at the time she killed assured.

"We believe the court erred in the respect above stated. But if not, then a just consideration for the appellant, as well as a due regard for our own agreement, freely made, impels us to say that it was agreed, or at least so intended in the trial court, that Goldie White was insane before and at the very time she killed assured. To remove that matter from controversy here and in line with the agreement actually made between the writer and appellant's counsel, we here agree that said Goldie White was insane before and at the very time she killed Myers."

Accepting and adopting the admission now so made, we conclude, for reasons stated in our original opinion, that in addition to the $3,000 awarded appellant that she should have the further sum of $3,000 by virtue of

the double indemnity clause of the policy declared upon, together with 12 per cent. damages allowed by our statutes of $6,000, with interest thereon at the rate of 6 per cent. per annum from and after the 29th day of October, 1923, and our original judgment will be reformed so as to so show, and as so reformed the judgment will be rendered in appellant's favor.

We see no reason for certifying this case that does not apply in many others in which writs of error are available and which we have refused to certify for reasons deemed sufficient, and we hence overrule not only the motion for rehearing, but also the motion to certify.